# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALIA HAFEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC., and VANTAGESCORE SOLUTIONS LLC,<br>,<br>        Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Alia Hafez ("Plaintiff"), by and through her attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendants Trans Union, Equifax, and Vantage Score Solutions ("Defendants").

## NATURE OF THE ACTION

  1. This action seeks to redress Defendants Equifax Information Services, LLC, Trans Union, LLC, and VantageScore Solutions LLC's systemic failure to adopt reasonable procedures to ensure the accuracy of consumer credit reports.

  2. Defendants are the leading personal credit reporting agencies in the nation, and Vantage is their joint venture, which operates as a shared proprietary consumer credit-scoring model. Consumers rely on them to accurately report their credit scores because negative credit scores result in long lasting credit stigma which can reduce a consumer's ability to open new lines of credit, obtain housing, and negotiate payment plans for contractual obligations such as utilities and cell phone plans.

  3. In 2020, the COVID-19 Pandemic (the "Pandemic") spread across the globe,

causing a massive economic crisis triggered by the enactment of Shelter-in-Place Orders across the United States.  As a result of the COVID-19 Pandemic, American unemployment swelled from 6.2 million to 20.5 million in the matter of months.[1]

4. As a result of this economic devastation, Congress sought to ease the economic impact caused by the Pandemic by enacting the Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 (the "CARES Act").  The CARES Act suspends the payment, interest accrual, and collections on federal student loans held by the United States Department of Education from March 13, 200 to September 30, 2020.  As a result, all student loan borrowers are automatically not required to make payments on their federally owned loans for this approximately six month period.

5. As part of the CARES Act, loan servicers and consumer reporting agencies are required to be reported as "current."  15 U.S.C. § 1681s-2.  This has the effect of protecting consumer credit scores because the loans are treated as if payment was timely made.  The purpose of the CARES Act's amendment to the FCRA was to ensure that the economic relief provided by the CARES Act did not negatively impact borrowers' credit.

6. Indeed, in response to the CARES Act, student loan servicers – like Navient – began notifying borrowers that their credit would not be negatively impacted by the CARES Act:

> **With this forbearance, will my loans be reported negatively to the credit bureaus?**
>
> No. The CARES Act provides additional relief on credit reporting for ED-owned loans. During the COVID-19 emergency administrative forbearance, ED-owned loans will be reported as if regularly scheduled payments had been made by the borrower. This reporting is similar to borrowers enrolled in Income-Driven Repayment (IDR) with a $0 payment. Keep in mind that delinquency reported prior to the COVID-19 emergency will remain on your credit report.
>
> We cannot provide advice on how credit scores are calculated; we report specific loan information to credit bureaus. Credit scores are available through several companies using confidential and proprietary methods. If you have questions about a specific credit score, please contact the company that issued it.

---

[1] https://www.pewresearch.org/fact-tank/2020/06/11/unemployment-rose-higher-in-three-months-of-covid-19-than-it-did-in-two-years-of-the-great-recession/ (last accessed July 9, 2020).

7. However, despite continual assurances that the CARES Act would not impact consumer credit reports, thousands of Navient borrowers' reports have seen a drastic drop in their credit scores.

8. Those drops occurred because Defendants have failed to comply with their obligations under Federal and State Law by reporting the forbearance of federal student loans as a negative remark on consumer's credit reports.  This has result in lowering consumer credit scores and jeopardizing consumer's access to credit during a time of increasing financial insecurity.  These and other harms could and should have been avoided had Defendants exercised even a modicum of reasonable care.

9. Plaintiff brings this putative class action on behalf of herself and all other similarly situated persons, and seeks order requiring Defendants to immediately halt and correct their unlawful practices and obtain relief on behalf of herself and thousands of other borrowers.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of the Fair Credit Reporting Act, 15 US.C. § 1681 *et seq.*

11. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Hafez is a citizen of New Jersey, resides in this District, and suffered the consequences of Defendants' in this District.

## PARTIES

12. Plaintiff Hafez is a citizen of New Jersey who resides in Rahway, New Jersey Plaintiff Hafez's federal student loan payments were suspended pursuant to the CARES Act.  On May 11, 2020, Ms. Hafez's credit score dropped by approximately 97 points.  This drop was

attributed to the erroneous reporting of her student loans by her student loan servicer, Navient. Subsequently, Navient removed any remark regarding the forbearance of Ms. Hafez's federal student loans. However, Defendants have not rectified Ms. Hafez's credit score, despite being informed that the remark by Navient contained false and inaccurate information regarding her credit history.

13. Defendant Equifax Information Services, LLC ("Equifax") is a foreign corporation with its principal place of business in Atlanta Georgia.

14. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company with its principal place of business in Chicago, Illinois.

15. Defendant VantageScore Solutions LLC ("VantageScore") is a Delaware Corporation with its headquarters in Connecticut. Defendants Equifax and Trans Union jointly own VantageScore.

16. Defendants Equifax, Trans Union, and Vantage Score Solutions LLC are "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(p).

17. Defendants Equifax and Trans Union sell consumer reports ("credit reports") to creditors, landlords, employers, and others seeking to evaluate consumers for credit, housing, employment, and other purposes contemplated in the FCRA.

18. Defendants' credit reports are consumer reports under the FCRA, 15 U.S.C. 1681a(D).

## FACTS

19. In response to the COVID-19 Pandemic, Congress enacted the CARES Act. *See* PL 116-136, March 27, 2020, 134 Stat 281. The purpose of the CARES Act was to ease the financial burden of COVID-19. One of the ways it achieved this purpose was by providing relief to borrowers of federal student loans.

4

20. Among these protections was automatic relief from repayment obligations. Specifically, Section 3513(b) of the CARES Act automatically suspended all payment obligations on loans held by the Department of education from March 27, 2020 through September 30, 2020. Section 3513(c) halted all accrual of interest during that same period.

21. The CARES Act completely relieves borrowers from their payment obligations from March 27, 2020 through September 30, 2020 (the "COVID Relief Period"). Congress recognized that unilaterally changing the payment requirements of student loans and interests rates could result in inaccurate credit reporting. As a result, student loan servicers, such as Navient, are required to report the "credit obligation or account as current." 15 U.S.C. 1681s-2(a)(1)(F)(ii)((I).

22. Further, the CARES Act requires the Secretary of Education to "ensure that, for the purpose of reporting information about the loan to a consumer reporting agency, any payment that has been suspended is treated as if it were a *regularly scheduled payment made by a borrower.*" § 3513(d).

23. Under any reasonable reading of the CARES Act, student loan borrowers who do not pay their federal loans during the COVID Relief Period are "current" on their obligations. Further, no interest is accruing, therefore the loans should not reflect an increase in the amount of debt during this period.

24. On June 19, 2020, in response to surging complaints, the head of the Consumer Financial Protection Bureau ("CFPB") urged creditors and credit reporting agencies to comply with their "pandemic-related disclosure and reporting obligations."[2]

25. Defendants, rather than doing their due diligence, as required by the FCRA, improperly reported thousands of federally owned student loans as being in forbearance or

---

[2] https://www.law360.com/assetmanagement/articles/1284877 (last accessed July 13, 2020).

accruing interest. This resulted in thousands of borrowers suffering a decrease in their credit score, when no payment was due on their student loans

26. When Plaintiff Hafez procured her consumer report from Equifax and Trans Union on May 11, 2020, the report Plaintiff received stated that her credit score had dropped by approximately 97 points. Subsequently, a remark appeared stating that a remark by "US Dept. of ED/Navient" had been removed from the report. However, Ms. Hafez's credit score did not adjust to reflect this correction.

27. Defendants' reporting was inaccurate. Plaintiff's student loan payments was suspended and Navient and Defendants were required to report all loans as current.

28. Plaintiff Hafez suffered a diminution in her Vantage 3.0 Score as a result of Defendants' Vantage Score 3.0 model failing to properly account for the fact that the CARES Act suspended payment obligations and interest accrual on student loans due to the COVID-19 Pandemic.

29. Trans Union and Equifax jointly developed, operate, and control the algorithm used to determine a given consumer's Vantage Score.

30. The algorithm used to determine a consumer's Vantage Score has changed over time, resulting in a series of Vantage Scores. The most recent algorithm generates a score referred to as Vantage Score 4.0. The previous score was the Vantage Score 3.0. Both the Vantage Score 3.0 and 4.0 are in used at the present time.

31. Trans Union and Equifax continue to be involved in implementing and developing ongoing Vantage Score models and algorithms.

32. In order to implement and continue developing and modifying Vantage Score algorithms, Trans Union and Equifax share consumer credit information among themselves.

33. In order to implement the Vantage Score algorithm, Trans Union, and Equifax each abide by agreed upon policies to ensure consistent data sets and a single consistent score.

34. Trans Union and Equifax offer Vantage Scores for free through their websites and also participate in a variety of joint ventures to sell and market Vantage Scores through their wholly owned subsidiary, Vantage.

35. Credit scoring models, including Vantage Score, are algorithms which generate a numeric score based on data contained in a consumer's credit report. Based on the algorithm's specifications, certain credit events, such as payments, account closures, defaulted payments, and liens, can negatively or positively affect a consumer's credit score.

36. Vantage Scores are used by financial institutions, creditors, and other users of credit scores to evaluate consumers for credit, housing, insurance, employment, utilities, and numerous other purposes.

37. Defendants Equifax, Trans Union, and Vantage failed to adjust the Vantage Score algorithm to account for relief provided to borrowers under the CARES Act.

38. Rather than treating the suspension of borrowers' payment obligations as a score-neutral or score-positive event, the Vantage Score algorithm used by Equifax, Trans Union, and Vantage treated the relief afforded to federal student loan borrowers' as a negative event.

39. The Vantage Score algorithm therefore caused a precipitous, sudden, and predictable drop in the Vantage Scores of student loan borrowers whose loans were serviced by Navient.

40. The drop was unjustified. Defendants had zero factual support for the drop in Vantage Scores. The borrowers whose scores dropped had done nothing differently than they had in the past. If anything, these consumers were a better credit risk than they would have been if student loan relief had never been offered.

41.     As a direct and predictable result of the failure of Defendants to adjust their scoring model, thousands of Americans' Vantage Scores dropped as soon as the credit reporting agencies began to inaccurately report federal student loans as being in forbearance or accruing interest.

42.     Had the Vantage Score model been properly adjusted to account for CARES Act loan relief, the model would have ensured that borrowers' with loans held by the U.S. Department of Education would experience no change in their scores, or experience an increase in their scores.

43.     In the realm of consumer debt and consumer reporting, a notation of forbearance or interest accrual is a red flag.  Forbearance implies that the borrower is unable to meet the terms of the loan as originally agreed, and that the borrower has a diminished present capacity to make payments and will face those obligations on an ongoing basis in the future.  Similarly, interest accrual indicates a reduction in borrowing capacity, increasing the amount due.

44.     The impact of Defendants' reporting of thousands of Navient student loan borrowers during the COVID-19 Pandemic when all federally owned student loans were to be reported as current during the COVID Relief Period, was immediate, sweeping, and devastating.

45.     For student loans serviced by Navient, borrowers' credit scores dropped immediately and significantly.

46.     The consumer reporting agencies' automated Vantage Score treated non-payment pursuant to the CARES Act as derogatory items that negatively impact the consumers' creditworthiness.

47.     Defendants' conduct was willful and reckless.

48. Even cursory attention to the information servicers were reporting should have alerted Defendants to the gross and sweeping nature of their misreporting, and the devastating and predictable impact their erroneous reporting would have.

49. Rather than implementing reasonable procedures to ensure they would not compound the financial impact of COVID-19 on thousands of Americans, Defendants instead continued with business as usual, relying on antiquated systems and automated processes which failed to account for changes required by the CARES Act.

50. Defendants had a myriad of existing options available to them that would have allowed them to report federal student loans in a fashion that would have preserved borrowers' credit.

51. Defendants could have easily reported accurate credit information using existing tools and procedures.  However, Defendants failed to do so.

52. Defendants should never have reported federal student loans as anything other than "current."  In particular, once Navient caught the erroneous report, Defendants should have corrected credit scores to provide an accurate report.

53. Defendants knew, or should have known, that Navient was inaccurately reporting student loan payment history.  Defendants failed to take appropriate steps to ensure that the student loan information provided was accurate.

54. Further, Defendants not only misreported the status of Navient federal student loans, they participated in incorporating those false reports into the Vantage Score.  Numerous consumers' Vantage Scores dropped significantly, as soon as Defendants incorporated Navient's inaccurate reporting into its database.

55. A sudden drop thousands of credit reports relating to Navient's reports should have also alerted Defendants of their reporting errors. Yet, this clear signifier of erroneous reporting garnered no correction to their reporting.

56. Defendants' actions have effectively counteracted the relief offered to federal student loan borrowers under the CARES Act. Rather than improving borrowers' financial status and their ability to acquire additional credit, Defendants' conduct has been to borrowers' detriment.

57. As a result of these actions, Defendants violated the FCRA by failing to employ reasonable procedures to ensure maximum credit accuracy. *See* 15 U.S.C. § 1681e(b). Had Defendants properly reviewed the information Navient furnished to it, Defendants would have realized the information was inaccurate.

## CLASS ACTION ALLEGATIONS

55. Plaintiff seeks to represent a class defined as:

> All residents of the United States about whom Navient furnished credit information to Equifax, Trans Union, or Vantage Score pertaining to federal student loans held in suspension due to the COVID-19 Pandemic.

58. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number are in the thousands. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

59. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to: (a) whether Defendants violated the FCRA by failing to follow

reasonable procedures to assure maximum possible consumer report accuracy; (b) whether any such violations were willful; and(c) the proper measure of damages.

60.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct, based upon Defendants' failure to follow reasonable procedures to ensure maximum possible consumer report accuracy.

61.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

62.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**(On Behalf Of The Class)**

63. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

64. Defendants failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the records it reported.

65. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

66. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy, because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information. The FCRA also imposes duties on the sources that provide credit information to credit agencies, called "furnishers."

67. Defendants are required to use reasonable procedures to ensure maximum possible accuracy when preparing consumer disclosures and willfully and/or negligently failed to do so.

68. Defendants acted in negligent, deliberate, and reckless disregard of their obligations and rights to Plaintiff and Class Members under 15 U.S.C. § 1681e(b). Defendants' negligent and willful conduct is reflect by, *inter alia*, the following:

12

    a. Defendants inaccurately reported the status of Plaintiff's and other Class Members' federal student loans;

    b. After learning about the inaccurate information furnished by Navient, Defendants continued to include inaccurate information in their reports, including, but not limited to, in the credit score itself, rather than correcting the inaccurate reports; and

    c. By adopting a policy of failing to review information from its furnisher, and of failure to retract such information, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

69. Plaintiff and Class Members suffered damages caused by Defendants, including ongoing credit and other financial harm.

70. Plaintiff and the Class are entitled to actual damages or statutory damages of not less than $1000 and not more than $1000 per individual for this violation. Plaintiff and the Class are also entitled to punitive damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Class Members respectfully request that the Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, statutory, actual, and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

C. Award Plaintiff and the Class their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D. Permanently enjoin Defendants from engaging in the unlawful conduct set forth herein; and

E. Grant any and all such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: July 15, 2020           Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
       Philip L. Fraietta

888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
E-Mail: bscott@bursor.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nicksuciu@bmslawyer.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*