<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALIA HAFEZ, *individually and on behalf of all others similarly situated*, | Civil Action No. 20-9019 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| EQUIFAX INFORMATION SERVICES, LLC, *et al.*, | April 23, 2021 |
| Defendants. | |

**WIGENTON,** District Judge.

Before this Court are Defendants' Motions to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motions to Dismiss are **GRANTED in part** and **DENIED in part**. Plaintiff may file an amended complaint within thirty days of this Court's Opinion.

**I.      FACTUAL BACKGROUND**

The instant dispute involves alleged noncompliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, as amended by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, § 4021, 134 Stat. 281 (2020), which provided temporary relief on the accrual of interest for eligible federal student loan borrowers. Before summarizing the allegations, this Court outlines pertinent portions of the FCRA and the

CARES Act to contextualize the pleading.

### A. The FCRA

The FCRA was enacted "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Pursuant to the FCRA, "[w]henever a consumer reporting agency [("CRA")][1] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The FCRA places duties on CRAs and those who furnish information to CRAs ("furnisher").[2] For example, if a consumer notifies a CRA of an inaccuracy in his or her credit report, the CRA must report the disputed information to the furnisher that provided it, 15 U.S.C. § 1681i(a)(2)(A), and reinvestigate the dispute, *id.* § 1681i(a)(1)(A). The furnisher must also investigate the disputed information. *Id.* § 1681s-2(b)(1).

### B. The CARES Act

In response to the Coronavirus pandemic, Congress enacted the CARES Act, which, among other provisions, temporarily halted the accrual of interest on eligible federal student loans held by the United States Department of Education from March 27, 2020 through September 30,

---

[1] CRAs are defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). In this context, a "person" includes an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b).

[2] A "furnisher" is a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer." 15 U.S.C. § 1681s-2(a)(2)(A).

2

2020.³  *See* Pub. L. No. 116-136, § 3513(a)–(b).  For purposes of reporting federal student loan information to CRAs during the suspended period, the Secretary of Education ("Secretary") shall ensure that "any payment that has been suspended is treated as if it were a regularly scheduled payment made by a borrower."  *Id.* § 3513(d).

The CARES Act also amended the FCRA to provide that if a consumer receives an "accommodation" from a furnisher as to one or more required payments,⁴ and the consumer either makes payments or is not required to make one or more payments, a furnisher shall either "report the credit obligation or account as current" or, in the case of a credit obligation or account that was delinquent *prior to* the accommodation, the furnisher shall "maintain the delinquent status" during the accommodation period.  *See* Pub. L. No. 116-136, § 4021, *codified at* 15 U.S.C. § 1681s-2(a)(1)(F)(ii)(I)–(II).  If a previously delinquent obligation or account becomes current during the accommodation period, then the furnisher shall report it as current.  15 U.S.C. § 1681s-2(a)(1)(F)(ii)(II)(bb).

### C. Plaintiff's Allegations

Alia Hafez ("Plaintiff") brings this action individually and on behalf of those similarly situated against Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), and VantageScore Solutions, LLC ("Vantage") (collectively, "Defendants") for

---

³ The suspension period was extended through January 31, 2021.  Press Release, U.S. Dep't of Educ., Secretary DeVos Fully Implements President Trump's Presidential Memorandum Extending Student Loan Relief to Borrowers Through End of Year (Aug. 21, 2020), https://www.ed.gov/news/press-releases/secretary-devos-fully-implements-president-trumps-presidential-memorandum-extending-student-loan-relief-borrowers-through-end-year (last visited Apr. 21, 2021); Press Release, U.S. Dep't of Educ., Secretary DeVos Extends Student Loan Forbearance Period Through January 31, 2021, in Response to COVID-19 National Emergency (Dec. 4, 2020), https://www.ed.gov/news/press-releases/secretary-devos-extends-student-loan-forbearance-period-through-january-31-2021-response-covid-19-national-emergency (last visited Apr. 21, 2021).

⁴ An "accommodation" is defined as "an agreement to defer 1 or more payments, make a partial payment, forbear any delinquent amounts, modify a loan or contract, or any other assistance or relief granted to a consumer who is affected by the . . . COVID-19[] pandemic during the covered period."  *See* Pub. L. No. 116-136, § 4021, *codified at* 15 U.S.C. § 1681s-2(a)(1)(F)(i)(I).

3

their alleged "failure to adopt reasonable procedures to ensure the accuracy of consumer credit reports" in violation of the FCRA, 15 U.S.C. § 1681e(b). (D.E. 50 ¶¶ 1, 68.) The alleged facts are as follows.

Plaintiff is a New Jersey resident with federal student loans serviced by Navient[5] that were suspended under the CARES Act. (*Id.* ¶ 13.) Navient erroneously reported her loans in "forbearance" instead of as "current." (*Id.* ¶¶ 13, 29, 31.) Consequently, her credit score, as reported by Equifax and TransUnion on Plaintiff's May 11, 2020 consumer credit report, fell by 97 points. (*Id.* ¶¶ 13, 29; *see id.* ¶ 31.) Thereafter, Navient removed the "forbearance" remark and notified Defendants that Plaintiff's credit report contained the inaccuracy. (*Id.* ¶ 13; *see id.* ¶ 29.) Subsequently, Plaintiff's credit report noted that a prior "forbearance" remark from "US Dept. of ED/Navient" was removed. (*Id.* ¶ 29.)

According to the Amended Complaint, Defendants are CRAs that compile and maintain files on consumers on a nationwide basis. (*Id.* ¶ 17 (citing 15 U.S.C. § 1681a(p)).) Equifax and TransUnion jointly own Vantage and developed a credit-scoring model called Vantage Score. (*Id.* ¶¶ 16, 33, 39.) "Vantage Score" uses an algorithm to produce a numeric score using data from a consumer's credit report. (*Id.* at ¶ 39.) Based on the algorithm, certain "credit events" such as credit payments and defaulted payments will positively or negatively impact a consumer's credit score. (*Id.*) Equifax and TransUnion allegedly control the Vantage Score algorithm and sell consumer credit reports containing Vantage Scores to persons and entities for evaluative purposes. (*Id.* ¶¶ 18, 33–34, 38, 40.) Because Equifax and TransUnion continue to implement, develop, and modify the Vantage Score algorithm, they purportedly share consumers' credit information with each other and operate under policies to ensure consumers' data and Vantage Scores are consistent.

---

[5] Navient is not a party in this action. (*See generally* D.E. 50.)

(*Id.* ¶¶ 35–37.)

Plaintiff alleges that the Vantage Score algorithm did not adjust to account for the CARES Act due to Defendants' "antiquated systems and automated processes," including their failure to review information from furnishers. (*Id.* ¶¶ 41, 53, 72.) Accordingly, Defendants' algorithm treated the suspension of federal student loan payments as negative credit events, causing a drop in student borrowers' credit scores, including Plaintiff.[6] (*Id.* ¶¶ 42, 44–45; *see also id.* ¶ 32.) Plaintiff avers that her reduced credit score generated by Defendants' credit-scoring model "creates a materially misleading impression" of her "creditworthiness." (*Id.* ¶ 32.) Plaintiff's inaccurate credit report was given to third parties on May 13, 2020, May 20, 2020, and August 25, 2020. (*Id.* ¶ 30.) The Crossings at One denied Plaintiff's housing application based on her inaccurate credit report from Equifax, dated August 25, 2020. (*Id.* ¶¶ 13, 30.)

Plaintiff maintains that Defendants acted negligently, willfully, and recklessly because they knew or should have known that under the CARES Act, federal student loans, including those serviced by Navient, should have been reported as "current." (*Id.* ¶¶ 51, 57, 72.) Plaintiff raises one count in the Amended Complaint for alleged violation of 15 U.S.C. § 1681e(b) (*id.* ¶¶ 67–74), and seeks injunctive relief, actual damages, statutory damages, and punitive damages for "ongoing" harm to her credit as well as "other financial harm." (*Id.* ¶¶ 10, 73–74.) Defendants filed separate motions to dismiss. (D.E. 54 (Vantage); D.E. 55 (Equifax); D.E. 56 (TransUnion).) Plaintiff opposed each motion (D.E. 62, 63, 64), and Defendants replied (D.E. 65, 66, 67).

II.     **LEGAL STANDARDS**

A motion to dismiss under Rule 12(b)(1) may present either a facial or factual attack to a

---

[6] At other points in the Amended Complaint, Plaintiff suggests that only borrowers with federal student loans serviced by Navient were affected by Defendants' allegedly unlawful conduct. (*See* D.E. 50 ¶¶ 48–49, 58–59, 61.) However, Plaintiff seeks to represent a class of all United Stated residents whose federal student loans were inaccurately reported by the Defendants during the relevant period, regardless of their servicer. (*Id.* at 12 ¶ 55.)

court's subject matter jurisdiction. "A facial attack contests the sufficiency of the complaint because of a defect on its face, whereas a factual attack asserts that the factual underpinnings of the basis for jurisdiction fail to comport with the jurisdictional prerequisites." *Halabi v. Fed. Nat'l Mortg. Ass'n*, No. 17-1712, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (internal quotations omitted). When reviewing facial attacks, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). In contrast, with a factual attack, "a court may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

A defendant may also move to dismiss a complaint for failing to state a claim under Rule 12(b)(6). An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

6

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555). As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570).

### III. DISCUSSION

#### A. Standing

Article III standing ensures that federal courts do not exceed the constitutional limits on their jurisdiction, which extends only to "Cases" and "Controversies." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing U.S. Const. Art. III § 2). "[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (other citation omitted).

TransUnion argues that Plaintiff lacks constitutional standing because she cannot establish an injury in fact.[7] (D.E. 56-1 at 26–28.) "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "Article III standing requires a concrete injury even in the context of a statutory

---

[7] Although Equifax appears to take the same position with respect to Plaintiff's injury (*see* D.E. 55-1 at 5), "it did not move to dismiss Plaintiff's claim on that basis." (D.E. 66 at 4 n.1.) Moreover, because Equifax passingly disputes the redressability element in its reply brief only (*id.* at 2, 5), those arguments are not addressed. *See e.g.*, *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007).

violation." *Id.* at 1549.  Plaintiff's alleged credit score drop (*see* D.E. 50 ¶¶ 13, 29, 32, 73) is sufficient to establish a concrete injury at the pleading stage.  *See, e.g.*, *Boone v. T-Mobile USA Inc.*, No. 17-378, 2018 WL 588927, at *8–9 (D.N.J. Jan. 29, 2018) (collecting cases finding that "a depleted credit score constitutes an injury in fact" and is more than a "bare procedural [FCRA] violation"); (D.E. 67 at 12 (conceding courts' recognition that a decreased credit score constitutes an injury in fact).)  Moreover, while Plaintiff has not alleged a denial of credit or employment from her lowered credit score, she contends that her housing application was rejected because of her "unsatisfactory" credit history as reflected by Defendants' inaccurate reporting.  (D.E. 50 at ¶¶ 13, 30); *see Boone*, 2018 WL 588927, at *9 (noting that harm to a person's credit score could make it harder or more costly to obtain a mortgage).

TransUnion also disputes whether it is causally connected to Plaintiff's injury because she alleges two separates defendants (TransUnion and Equifax) produced a *single* credit report for Plaintiff on May 11, 2020 and fails to attribute any credit report solely to TransUnion.  (D.E. 56-1 at 25.)  Equifax and Vantage similarly argue that they are not causally connected to Plaintiff's lowered credit score and her denial of housing (D.E. 55-1 at 5–6; D.E. 54-1 at 10–11); however, Plaintiff squarely alleges that her housing application was rejected based on an inaccurate credit report from Equifax, and that Equifax produces a Vantage Score in its consumer reports.  (D.E. 50 ¶¶ 13, 30, 34.)   While the pleadings scarcely demonstrate how TransUnion and Equifax purportedly caused—through their development and oversight of the Vantage Score algorithm—Plaintiff's credit score to drop based on the processing of Navient's forbearance remark (*see id.* ¶¶ 32–46), this Court denies Defendants' motions to dismiss for lack of standing.  Nonetheless, if Plaintiff chooses to file an amended complaint, she should provide more facts to support how each

of her allegedly inaccurate credit reports are causally connected to one or more defendants.[8]

### B. FCRA Claim[9]

To establish a claim of negligent noncompliance with Section 1681e(b), Plaintiff must allege that: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez*, 617 F.3d at 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)). "A showing of inaccuracy is [ ] essential when considering a challenge under Section 1681e(b) . . . ." *Shechter v. Experian Info. Sols., Inc.*, No. 20-5552, 2021 WL 323302, at *3 (D.N.J. Jan. 31, 2021); *accord Angino v. Trans Union LLC*, 784 F. App'x 67, 69 (3d Cir. 2019). It is plaintiff's burden to establish that the reported information was inaccurate. *See Angino*, 784 F. App'x at 69; *Kaetz v. Educ. Credit Mgmt. Corp.*, No. 16-09225, 2019 WL 4745289, at *6 (D.N.J. Sept. 30, 2019), *reconsideration denied*, No. 16-09225, 2020 WL 3542382 (D.N.J. June 30, 2020) (citing *Cortez*, 617 F.3d at 708).

Plaintiff's claim is fatal because she does not sufficiently allege an inaccuracy in her credit reports. Because furnishers need not report accounts as "current" if they were delinquent *before* an accommodation under the FCRA as amended by the CARES Act, 15 U.S.C. § 1681s-

---

[8] While Vantage and Equifax attempt to shift blame to Navient (D.E. 54-1 at 10–11; D.E. 66 at 5), Plaintiff maintains that Defendants failed to rectify her credit score *after* Navient removed the "forbearance" remark from her account and notified Defendants of the inaccuracy. (D.E. 50 ¶¶ 13, 29.) If Plaintiff amends the pleading, she should also specify *when* Navient lifted the remark and notified Defendants of the reporting inaccuracy, particularly in relation to her allegedly inaccurate credit reports from May 13, 2020 onward.

[9] As a preliminary matter, Plaintiff's claim is deficient to the extent she maintains that Defendants—alleged CRAs—failed to report her student loans as current. (*See, e.g.*, D.E. 50 ¶ 6.) First, it is unclear whether Plaintiff avers that the Defendants, as opposed to Navient, inaccurately reported the status of her student loans on her credit reports. Second, the reporting provisions at issue specifically apply to the Secretary or furnishers of information. *See* Pub. L. No. 116-136, § 3513(d) (providing that "the *Secretary* shall ensure [], for the purpose of reporting information about the loan to a [CRA] . . . ") (emphasis added); *see also* 15 U.S.C. § 1681s-2(a)(1)(F) (stating the reporting "[r]esponsibilities of *furnishers* of information to [CRAs]" during the COVID-19 pandemic) (emphasis added). To this Court's knowledge, no authority suggests that these provisions apply to CRAs, nor does Plaintiff claim that Defendants are furnishers.

2(a)(1)(F)(ii)(II), Plaintiff's position that it is "patently inaccurate" to report federal student loans as anything other than "current" (D.E. 50 ¶ 24; *see id.* ¶¶ 6, 22, 31, 56) is incorrect as a matter of law. Moreover, to the extent Plaintiff disputes the legal characterization of her student loan debt under the CARES Act, courts have found that CRAs "are not required to investigate the *legal* validity of the underlying debts they report. . . . [and] are only liable for patent, factual inaccuracies contained in credit reports." *See, e.g.*, *Leboon v. Equifax Info. Servs., LLC*, No. 18-1978, 2019 WL 3230995, at *4 (E.D. Pa. July 17, 2019) (internal citations omitted).

Plaintiff does not state whether her federal student loans were current prior to the CARES Act or whether she received an accommodation of any sort during the covered period.[10] For these reasons alone, the Amended Complaint against all Defendants is dismissed.[11] *See, e.g.*, *Kaetz*, 2019 WL 4745289, at *6 (dismissing a Section 1681e(b) claim where plaintiff, whose debt was discharged in bankruptcy court, failed to plead an inaccuracy with respect to his reported student loans because the debt was "presumptively non-dischargeable" in bankruptcy).

In addition, Plaintiff maintains that a single credit report from May 11, 2020 was produced by both Equifax and TransUnion, which she alleges are separate entities. (*See id.* ¶¶ 14–15.) It is unclear whether Equifax and TransUnion allegedly produced the credit report jointly, whether they each provided separate reports, or whether one entity furnished the May 11, 2020 credit report.

---

[10] In the same vein, even if Plaintiff's loans were current, she vaguely claims that a 97-point drop in her credit score occurred without alleging the date of her last credit report or her last known credit score. (*See generally* D.E. 50.)

[11] It is also unclear whether Plaintiff's dispute involves one or two purported inaccuracies. Plaintiff asserts that her credit score, as reported on May 11, 2020, fell because Navient erroneously reported her federal student loans as in "forbearance." (D.E. 50 ¶¶ 13, 29.) Plaintiff concedes that Navient removed the inaccurate "forbearance" remark, but she does not state when the removal occurred. (*See id.* ¶¶ 13, 29.) Thus, the inaccuracies may include the "forbearance" remark and/or Plaintiff's lower credit score, which was not rectified after the remark's removal. (*See id.* ¶ 30 (claiming that her "inaccurate consumer report" was given to third parties from May 13, 2020 onward but failing to specify the purported inaccuracies in each report); *id.* ¶ 29).) Accordingly, Plaintiff should specify the inaccuracies in each credit report if she elects to amend the pleading. Plaintiff should also consider—beyond an unsupported assertion (*see* D.E. 62 at 11 n.2)—whether a diminished credit score alone may serve as both an inaccuracy *and* an injury. Furthermore, Plaintiff's claim that Defendants willfully violated Section 1681e(b) should be pled with more specificity in an amended complaint.

10

Plaintiff also maintains that her credit report was distributed on at least two other occasions without attribution to any defendant and avers that her August 25, 2020 report was produced by Equifax—yet she attempts to hold all Defendants collectively responsible for the reports. (D.E. 50 ¶¶ 13, 30.) Accordingly, Plaintiff does not satisfy Rule 8(a) because she fails to place each defendant on notice of which credit report and purported inaccuracies pertain to each of them.[12] *See, e.g., Shaw v. Housing Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (noting that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants").

Finally, Vantage argues that dismissal is proper because Plaintiff does not allege that it is a CRA under the FCRA. (D.E. 54-1 at 6–10.) This Court agrees. A consumer reporting agency "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange "for monetary fees, dues, or on a cooperative nonprofit basis." 15 U.S.C. § 1681a(f). Although Plaintiff maintains that TransUnion and Equifax sell consumer credit reports to third parties (D.E. 50 ¶ 18), there are no similar allegations regarding Vantage's business model apart from merely devising a credit-scoring algorithm. (*See generally id.*) In addition, Plaintiff's conclusory allegation that Vantage is a CRA pursuant to 15 U.S.C. § 1681a(p) differs from her argument in opposition that Vantage is a CRA as defined under 15 U.S.C. § 1681a(f). (*Compare* D.E. 50 ¶ 17, *with* D.E. 64 at 5.)

---

[12] TransUnion also argues that Plaintiff's reduced credit score alone cannot form the basis of actual damages. (D.E. 56-1 at 22–23.) TransUnion acknowledges that Plaintiff claims she was denied housing based on an inaccurate consumer report; however, this report was generated by Equifax, not TransUnion. At least one court in our District has held that an FCRA claim cannot be maintained absent an injury flowing from an alleged decrease in credit score, such as denied or lost credit. *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *8 (D.N.J. Sept. 21, 2010). While this Court does not grant TransUnion's motion on this basis due to attenuated allegations regarding its purported role in developing the Vantage Score algorithm and Equifax's inclusion of Vantage Scores in its consumer reports (D.E. 50 ¶¶ 32–43), Plaintiff may amend her complaint with additional facts regarding her injuries and their causal relationship to each defendant.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED in part** and **DENIED in part**.[13] Plaintiff may amend her complaint within thirty days to the extent she can cure the pleading deficiencies outlined above. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Leda D. Wettre, U.S.M.J.
           Parties

---

[13] To the extent Plaintiff seeks injunctive relief under the FCRA as a private actor (*see* D.E. 50 ¶ 10), her claim is dismissed *with prejudice*. *See, e.g.*, *Carlton v. Choicepoint, Inc.*, No. 08-5779, 2009 WL 4127546, at *6 (D.N.J. Nov. 23, 2009) (stating that only the Federal Trade Commission can seek injunctive relief under the FCRA) (citing *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000)).

This Court is also in receipt of TransUnion's unopposed requests for judicial notice of several Internet sources. (D.E. 56-2; D.E. 67-1.) TransUnion's requests are denied *without prejudice* at this juncture.